IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTEMIO M. ARROYO, | No. C 09-01745 SBA (PR) |
| Petitioner, | **ORDER GRANTING RESPONDENT'S MOTION TO DISMISS** |
| v. | |
| RANDY GROUNDS, Warden, | (Docket no. 5) |
| Respondent. | |

## INTRODUCTION

Petitioner, Artemio M. Arroyo, a prisoner incarcerated at the Correctional Training Facility (CTF), has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a 2007 disciplinary decision.

Before the Court is Respondent Randy Grounds's[1] motion to dismiss the petition on the ground that the petition fails to raise a federally cognizable habeas claim. Petitioner opposes the motion. Respondent has filed a reply to the opposition.

For the reasons discussed below, the Court GRANTS Respondent's motion to dismiss.

## BACKGROUND

Petitioner is serving an indeterminate sentence of fifteen years to life imprisonment on a 1980 conviction for second-degree murder. At the time of the 2007 disciplinary decision at issue here, he was about twenty-seven years into that sentence and was long past his minimum eligible parole date.

Petitioner received a rules violation report (CDC-115) stemming from an incident on March 18, 2007 at CTF. He was charged with resisting a peace officer. (Resp't Ex. 1.) On or about April 7, 2007, a disciplinary hearing was held on the CDC-115. (Id.) Petitioner was found guilty of the

---

[1] Respondent requests that Acting Warden Randy Grounds replace former Warden Ben Curry as Respondent in this case. The rules governing relief under 28 U.S.C. § 2254 require a person in custody pursuant to the judgment of a state court to name the "'state officer having custody'" of him as the Respondent. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996) (quoting Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section § 2254). Therefore, the Court grants this request.

charge and assessed a ninety-day loss of credit. (Id.) Also, Petitioner was counseled and reprimanded. (Id.) There is no evidence that there was any other discipline imposed.

Also in 2007, the California Board of Parole Hearings (BPH) found Petitioner unsuitable for parole. The habeas petition in this action does not challenge the 2007 denial of parole.[2] Nonetheless, Petitioner's parole suitability hearing in 2007 bears upon his challenge to the 2007 disciplinary decision because he contends that the disciplinary decision adversely affected his parole consideration. In opposition to the motion to dismiss, Petitioner submitted as an attachment the decision portion of the transcript of the 2007 parole suitability hearing.

The available portion of the 2007 parole suitability hearing decision transcript makes it clear that it was not only the 2007 CDC-115 that caused the BPH to find Petitioner unsuitable for parole, although that disciplinary offense posed a significant concern for the BPH. The BPH denied parole based on the nature of the commitment offense, Petitioner's lack of insight, his unstable social history based on gang affiliation, his insufficient participation in beneficial self-help and substance abuse programming, his disciplinary history that included a total of fifteen CDC-115s and ten counseling memoranda (CDC-128s), his negative psychological evaluation, his in-prison use of controlled substances, the need for firmer parole plans, and finally, the oppositions to parole from the District Attorney of San Joaquin County as well as the Lodi Police Department. (Opp'n, Ex. A at A1-A6.) A BPH commissioner stated that Petitioner needed further "documented self-help in order to face, discuss, understand, and cope with stress and anger in a non-destructive manner." (Id. at A6.) The commissioner also stated: "Until progress is made, this prisoner continues to be unpredictable and a threat to others." (Id.) The 2007 denial was a four-year denial. The BPH specifically determined that it was "not reasonable to expect that parole would be granted at a hearing during the next four years." (Id. at A7.) The commissioner listed the reasons for that decision as the commitment offense, Petitioner's disciplinary history, his prior gang affiliations, the negative psychological evaluation, and his need for further programing. (Id. at A7-A8.) The

---

[2] If Petitioner wants to challenge the 2007 parole decision, he may file a separate habeas action, but not until he exhausts state court remedies as to all claims he wants to present in federal court with regard to that decision.

1  commissioner again noted the absence of evidence that Petitioner participated in self-help and
2  substance abuse programming, and cautioned him to focus on benefitting from any future
3  programming:

> What's more important for you is to understand and be able to explain to the next Panel why you chose to attend certain things and what did you get out of it? What tools did you learn, if anything, that you're using to stay on the straight and narrow, to be a success.

(Id. at A8.) Finally, the 2007 disciplinary decision was raised when the commissioner made the following comment: "This prisoner, again, has a history of unstable tumultuous relationships with others as evidenced by his gang affiliation and that he has recently committed a serious disciplinary violation, and that is that 115 he received in March of 2007 for resisting a peace officer." (Id. at A7.)

In his federal habeas petition, Petitioner claimed that his due process rights were violated during the 2007 disciplinary proceeding. The Court issued an Order to Show Cause directing Respondent to answer the instant petition.

Respondent moves to dismiss, arguing that habeas jurisdiction is lacking because Petitioner does not challenge the fact or duration of his confinement. Petitioner opposes, arguing that the CDC-115 "will inevitable affect the duration of [his] time in prison." (Opp'n at 2.)

### DISCUSSION

Interests that are procedurally protected by the Due Process Clause may arise from two sources -- the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Petitioner's 2007 disciplinary decision did not involve a change so severe as to implicate the Due Process Clause itself.

Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation and that the liberty in question is one of "real substance." See Sandin, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"[3] or "will inevitably affect the duration of [a] sentence." Sandin, 515 U.S. at 484, 487.

In Sandin, the United States Supreme Court explained what does not qualify as an interest of "real substance." Sandin determined that the possible effect of a disciplinary decision on parole consideration did not show that the disciplinary decision would inevitably affect the duration of the plaintiff's sentence. See id. at 487. State law did not require "the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, . . . even though misconduct is by regulation a relevant consideration. . . . The decision to release a prisoner rests on a myriad of considerations. . . . The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."[4] Id. In sum, the impact of a disciplinary decision on a life inmate's later parole decision is too speculative to say that the decision has the inevitable effect on the duration of confinement that is necessary for federal due process protections to attach.

Here, upon being found guilty on the CDC-115, Petitioner received a ninety-day loss of credit. If Petitioner was in prison on a term of years, such a penalty apparently would inevitably affect the duration of his confinement by making it ninety days longer than it otherwise would be. However, as mentioned above, Petitioner is an indeterminate life inmate, who is twenty-seven years

---

[3] There is nothing in the record to suggest that the "atypical and significant hardship" prong of Sandin is at issue, e.g., Petitioner in the present case did not allege he suffered any loss of privileges or was sentenced to a term in disciplinary segregation. Therefore, this prong of Sandin is not further discussed.

[4] Although Sandin's discussion pertained to statutes and regulations in Hawaii, California's statutes and regulations also permit the parole authority to consider a wide variety of factors in deciding whether an inmate is suitable for parole. See Cal. Penal Code §§ 3041, 3046; Cal. Code Regs. tit. 15, §§ 2280-2292.

4

1  into his fifteen-years-to-life sentence.  Neither Respondent nor Petitioner has identified any way in
2  which those ninety days of credits matter at this point in Petitioner's sentence.  They cannot extend
3  his maximum term (as that is life), nor can they extend his minimum term (as that was fifteen years
4  and has long passed).  The time credit forfeiture imposed on Petitioner did not inevitably affect the
5  duration of his sentence.  Under the reasoning of Sandin, therefore, Petitioner had no protected
6  liberty interest and therefore no federal right to due process in the 2007 disciplinary proceeding.
7  Without a federal right to due process, Petitioner cannot state a claim for a due process violation.

8       Petitioner seems to suggest the CDC-115 caused the BPH to deny parole in 2007.  The
9  existence of a CDC-115 -- regardless of whether time credits are forfeited -- in a prisoner's file does
10 not help his chance for parole at a parole suitability hearing.  However, the disciplinary record is but
11 one of many factors that go into the evaluation of the parole applicant.  Again, Sandin guides the
12 analysis, as it recognized that a disciplinary decision that will be one of a "myriad of considerations"
13 in the parole suitability evaluation does not inevitably affect the duration of the prisoner's sentence.
14 Sandin, 515 U.S. at 487.  "The chance that a finding of misconduct will alter the balance is simply
15 too attenuated to invoke the procedural guarantees of the Due Process Clause."  Id.  California's
16 regulations allow the BPH to consider many circumstances to determine whether the life inmate is
17 suitable for parole.  See Cal. Code Regs., tit. 15, § 2281(c), (d).  Prison misconduct may be
18 considered but is not the only circumstance, nor even the paramount one, in determining parole
19 suitability.

20      As mentioned above, the BPH's decision provided by Petitioner shows that there were
21 numerous reasons for the four-year denial.  The 2007 disciplinary offense did not lead to a denial
22 where parole otherwise would have been granted.  It can be said with certainty that the CDC-115 did
23 not alone extend the length of Petitioner's sentence.  Therefore, he had no federally protected right to
24 due process.[5]

---

[5] Almost any disciplinary decision has the potential to adversely impact the indeterminate-sentenced prisoner's parole prospects. Even counseling memoranda may adversely affect the parole prospects. Allowing their potential effect to be enough to show a protected liberty interest could well lead to federal court review of every CDC-115 and CDC-128 issued to life inmates. For example, Petitioner in the present case could have been the source for as many as twenty-five habeas

United States District Court
For the Northern District of California

1    If the speculative impact on the parole consideration was alone sufficient to establish a
2 protected liberty interest in disciplinary proceedings -- which the Court has just determined it does
3 not -- the claim would belong in a civil rights rather than a habeas action.

4    "'Federal law opens two main avenues to relief on complaints related to imprisonment: a
5 petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871,
6 Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983.  Challenges to the validity of any confinement or
7 to particulars affecting its duration are the province of habeas corpus.'"  Hill v. McDonough, 547
8 U.S. 573, 579 (2006) (quoting Muhammad v. Close, 540 U.S. 749, 750 (2004)).  "An inmate's
9 challenge to the circumstances of his confinement, however, may be brought under § 1983."  Id.

10    Traditionally, challenges to prison conditions have been cognizable only via a § 1983 civil
11 rights action, while challenges implicating the fact or duration of confinement must be brought
12 through a habeas petition.  Docken v. Chase, 393 F.3d 1024, 1026 (9th Cir. 2004).  The two
13 remedies are not always mutually exclusive, however.  Id. at 1031; see also id. at 1027 n.2.  The
14 Ninth Circuit has permitted habeas to be used to assert claims that are "likely to accelerate"
15 eligibility for parole, even though success in such cases would not necessarily implicate the fact or
16 duration of confinement.  Id. at 1028 (citing Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989), and
17 Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004)).  Though
18 rich with broader pronouncements to the effect that § 1983 and habeas overlap in many respects, the
19 actual holding in Docken was somewhat narrower: "when prison inmates seek only equitable relief
20 in *challenging aspects of their parole review* that, so long as they prevail, could potentially affect the
21 duration of their confinement, such relief is available under the federal habeas statute."  Docken, 393
22 F.3d at 1031 (emphasis added).

23    In Ramirez, the Ninth Circuit held that "habeas jurisdiction is absent, and a § 1983 action
24 proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's

---

petitions, as he had fifteen CDC-115s and ten CDC-128s in his file at the time of his 2007 parole suitability hearing.  If federal judicial review extended to every CDC-115 and CDC-128, there does not seem to be any sensible reason to stop there, as many other decisions (such as prison placement and job assignments in prison) might also potentially impact the parole decision and, therefore, also might qualify for judicial review.

1  sentence." 334 F.3d at 859.  The district court had dismissed a prisoner's § 1983 complaint
2  challenging disciplinary decisions as barred by Heck because the prisoner had not yet had the
3  disciplinary sentence invalidated.  Id. at 853.  The appellate court reversed, concluding that the
4  plaintiff could challenge the decision under § 1983 because the Heck "rule does not apply to § 1983
5  suits challenging a disciplinary hearing or administrative sanction that does not affect the overall
6  length of the prisoner's confinement."  Id. at 858.

7  The foregoing cases do not answer the question of whether there is a claim for a violation of
8  a constitutional right, such as a right to due process.  Rather, they assume the existence of the right
9  and concern which kind of action -- habeas or § 1983 -- to use to pursue a claim based on the
10 violation of that right.

11 As stated above, Petitioner does not challenge some aspect of his parole review, but instead a
12 separate disciplinary decision that may in turn have some effect on some aspect of his parole review.
13 The case that most suggests such a claim can be brought in habeas is Docken, but even that case is
14 distinguishable because its holding was limited to cases in which "inmates seek only equitable relief
15 in challenging aspects of their parole review."  Docken, 393 F.3d at 1031.  Petitioner is more like the
16 plaintiff in Ramirez, in that he is challenging a disciplinary decision that will not necessarily shorten
17 the sentence and therefore should be pursued in a § 1983 action because habeas jurisdiction is
18 absent.  Although Docken and Ramirez are helpful in figuring out that a challenge to a disciplinary
19 decision would have to be brought in a § 1983 action rather than habeas, the Court reiterates that
20 reliance on the reasoning of cases deciding one question (whether a claim should be pursued in
21 habeas versus civil rights) to figure out the answer to a different question (whether there is a federal
22 due process right) only confuses the analysis.  For example, Docken seems to suggest that there need
23 only be a potential (rather than an inevitable) effect on the duration of the sentence for habeas relief
24 to be available.  However, the petitioner in Docken did not assert a due process claim but instead
25 asserted an Ex Post Facto Clause claim based on the parole board's refusal to provide him with
26 annual review of his parole suitability.  See 393 F.3d at 1026; see id. at 1025 (reversing district
27 court's dismissal of the petition as not proper under habeas).  Docken is not helpful on the question
28 of whether Petitioner can state a due process claim because Sandin's requirement of an inevitable

7

1  effect on the sentence is for a due process claim, not for other kinds of constitutional claims, such as
2  ex post facto claims. Ramirez is not helpful in figuring out whether Petitioner can state a due
3  process claim for a different reason. Unlike Petitioner, the plaintiff in Ramirez received a twenty-
4  four-month administrative segregation term, which might have been an atypical and significant
5  hardship that is the other route to establishing the deprivation of a liberty interest of reals substance
6  for Sandin purposes. See supra footnote 3; see also Ramirez, 334 F.3d at 860-61.

7       In sum, Petitioner cannot state a claim for a violation of his rights under the Due Process
8  Clause because the 2007 prison disciplinary decision did not implicate a federally protected liberty
9  interest. The decision led to the forfeiture of time credits, but that forfeiture will not inevitably
10 affect the duration of confinement for this indeterminate-sentenced inmate who is long past his
11 minimum parole date and whose parole suitability will depend on a "myriad of circumstances."
12 Furthermore, this is not a matter of whether the claim ought to be pursued in civil rights rather than
13 in habeas, but rather whether there is a due process claim at all. The Court concludes there is not.
14 This action must be dismissed. Accordingly, Respondent's motion to dismiss is GRANTED.

## **CONCLUSION**

16      For the foregoing reasons, Respondent's motion to dismiss (docket no. 5) is GRANTED.
17 This action is DISMISSED for failure to state a claim upon which relief may be granted.
18      The Clerk of the Court shall enter judgment, terminate all pending motions and close the file.
19      This Order terminates Docket no. 5.
20      IT IS SO ORDERED.

21 DATED: September 30, 2010

                                      _Saundra B Armstrong_
22                                   SAUNDRA BROWN ARMSTRONG
                                  United States District Judge

(United States District Court / For the Northern District of California)

G:\PRO-SE\SBA\HC.09\Arroyo.1745.grantMTD.wpd    8

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ARTEMIO M ARROYO,

        Plaintiff,

v.

BEN CURRY et al,

        Defendant.

Case Number: CV09-01745 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 1, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Artemio Mendez Arroyo C-20149
California Training Facility
P.O. Box 689
Soledad, CA 93960

Dated: October 1, 2010

                                        Richard W. Wieking, Clerk
                                        By: LISA R CLARK, Deputy Clerk

G:\PRO-SE\SBA\HC.09\Arroyo.1745.grantMTD.wpd